UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO VILLANUEVA,<br><br>Petitioner,<br><br>v.<br><br>BRYAN D. PHILLIPS, Warden,<br><br>Respondent. | No. 1:23-cv-01352-SKO (HC)<br><br>**ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE**<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY DEADLINE]** |

Petitioner is a state prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner filed the instant petition challenging his convictions for sexually abusing minor children. As discussed below, the Court finds the claims to be without merit and will recommend the petition be DENIED.

**I.    PROCEDURAL HISTORY**

On December 12, 2019, Petitioner was convicted by jury trial in the Kern County Superior Court of eight counts of lewd and lascivious acts with a minor under the age of fourteen in violation of Cal. Penal Code § 288(a) and two counts of oral copulation on a minor under the age of fourteen in violation of Cal. Penal Code § 288a(c)(1). (Doc. 7-4 at 186, 188-89.[1]) The jury

---
[1] Docket citations refer to ECF pagination unless otherwise noted.

1

further found true multiple victim special circumstance allegations in violation of Cal. Penal Code § 667.61(e)(4). (Doc. 7-12 at 2.) On January 31, 2020, Petitioner was sentenced to an indeterminate term of 190 years to life. (Doc. 7-12 at 3.)

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). (Doc. 7-9.) On April 11, 2022, the Fifth DCA affirmed judgment. (Doc. 7-12.) Petitioner filed a petition for rehearing on April 20, 2022, but the petition was denied on April 25, 2022. (Doc. 7-13.) On May 12, 2022, Petitioner filed a petition for review in the California Supreme Court. (Doc. 7-14.) The California Supreme Court denied the petition on June 15, 2022. (Doc. 7-14.)

On September 13, 2023, Petitioner filed a federal habeas petition in this Court. (Doc. 1.) On November 1, 2023, Respondent filed an answer to the petition. (Doc. 8.) On November 16, 2023, Petitioner filed a traverse to the answer. (Doc. 9.)

## II.     FACTUAL BACKGROUND[2]

Petitioner's wife operated a daycare for many years out of the family home. Sometimes, she would leave to run errands, leaving Petitioner as the only adult at the daycare. Eight victims ultimately came forward and disclosed sexual abuse at the daycare.

Victim 1 estimated Petitioner sexually abused her more than 100 times (Counts 1 & 2). She also saw him abuse Victims 2, 4 and 5.

Victim 2 described various sexual abuse perpetrated by Petitioner (Counts 3 & 4). Victim 2 described being abused with Victim 1. Victim 1 partly corroborated that testimony.

Victim 3 testified Petitioner sexually abused her on five distinct occasions (Count 5).

Victim 4 described at least five incidents in which Petitioner sexually abused her, and stated she witnessed him abuse Victims 2 and 3 (Count 6).

Victim 5 testified to approximately six instances of sexual abuse committed by Petitioner (Count 7). She also saw Petitioner abuse Victim 4.

Victim 6 described Petitioner sexually abusing her "[e]very day" (Count 8).

---

[2] The factual background is taken from the opinion of the Fifth DCA in People v. Villanueva, 2022 WL 1078622, at *1-2 (Cal. Ct. App. July 27, 2022), *review denied* (June 15, 2022), and is presumed correct.

1 | Victim 7 explained she was twice sexually abused by Petitioner (Count 9). She once saw
2 | Petitioner take Victim 1 into a room and close the door.

3 | Victim 8 testified to numerous and various acts of sexual abuse perpetrated by Petitioner
4 | (Count 10). She claimed Victim 1 witnessed one of the incidents, but Victim 1 did not
5 | corroborate the specific act.

6 | Several expert witnesses also testified at trial. One expert testified he performed several
7 | tests on Petitioner and opined Petitioner was not "impulsive," not a "risk taker," disorganized,
8 | lacked "cognitive flexibility," did not exhibit "deviant sexual interest or sexual behaviors," and
9 | did not exhibit characteristics consistent with pedophilia.

10 | **III.    DISCUSSION**

11 | A.    Jurisdiction

12 | Relief by way of a petition for writ of habeas corpus extends to a person in custody
13 | pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or
14 | treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
15 | 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as
16 | guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern
17 | County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. §
18 | 2254(a); 28 U.S.C.§ 2241(d).

19 | On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
20 | 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
21 | enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases
22 | filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA
23 | and is therefore governed by its provisions.

24 | B.    Legal Standard of Review

25 | A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless
26 | the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision
27 | that was contrary to, or involved an unreasonable application of, clearly established Federal law,
28 | as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was

3

1  based on an unreasonable determination of the facts in light of the evidence presented in the State

2  court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);

3  Williams, 529 U.S. at 412-413.

4        A state court decision is "contrary to" clearly established federal law "if it applies a rule

5  that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set

6  of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a

7  different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-

8  406).

9        In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that

10  an "unreasonable application" of federal law is an objective test that turns on "whether it is

11  possible that fairminded jurists could disagree" that the state court decision meets the standards

12  set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable

13  application of federal law is different from an incorrect application of federal law.'" Cullen v.

14  Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from

15  a federal court "must show that the state court's ruling on the claim being presented in federal

16  court was so lacking in justification that there was an error well understood and comprehended in

17  existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

18        The second prong pertains to state court decisions based on factual findings. Davis v.

19  Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).

20  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

21  petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

22  facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539

23  U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's

24  factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable

25  among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-

26  1001 (9th Cir. 2004), *cert. denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

27        To determine whether habeas relief is available under § 2254(d), the federal court looks to

28  the last reasoned state court decision as the basis of the state court's decision. See Ylst v.

Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

In a case where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

   C.   Review of Petition
      1.   Ground One

Petitioner first claims the trial court violated his constitutional rights by precluding him from introducing evidence at trial that his character was not consistent with that of a typical child molester. This claim was raised on direct review in the state courts. In the last reasoned decision, the Fifth DCA denied the claim as follows:

> The sole issue in contention is whether the trial court abused its discretion in excluding expert opinion testimony Villanueva did "not have a sexual interest in children, therefore his character [was] not consistent with that of a typical child molester...." The People contend the court properly excluded the evidence and if not, "any error was harmless...."
>
> We conclude the court did not abuse its discretion in excluding the evidence. We also explain why any error would be harmless based on this record.
>
> **Additional Background**
>
> Two expert witnesses testified about the Abel test. The first expert, at an Evidence Code section 402 hearing outside the jury's presence, explained, "The Abel test really only has one purpose and that is to determine what someone's sexual interest is."

5

The test is based on "laws of attraction...." Essentially, 80 photographs are displayed one by one on a computer screen. The subject must "imagine being sexual with the model [in the picture]" and then "hit enter when" finished. The computer measures the time spent in "milliseconds for each of the categories" of photographs. The test also involves a "history" or "questionnaire" about "drug abuse, psychological issues[, and] any sexual interest or problems in the past." [Fn.7]

> [Fn.7] This testimony was presented at an Evidence Code section 402 hearing by an expert that did not testify before the jury.

The test is scored and then compared against "community norms...." When the scores exceed "community norms," the subject's sexual interest is identified.

The second expert witness testified both at an Evidence Code section 402 hearing and before the jury. At the hearing, the expert acknowledged he did not administer the entire Abel test. Instead, he gave the history or questionnaire portion and then relied on the first expert's results related to the photographs. In response to the court's question whether the expert "gave questionable validity to [the questionnaire] results," the expert answered, "That's correct."

The court ruled the expert opinion based on the Abel test lacked foundation because it was not "designed ... to be diagnostic." The court primarily based its ruling on *People v. Fortin* (2017) 12 Cal.App.5th 524 (*Fortin*) where the appellate court found, in part, the Abel test "has not gained acceptance as a way to prove or disprove an accused's sexual interest in children during the guilt phase of a criminal trial." (*Id*. at p. 534.)

Subsequent to the ruling, the second expert testified at the trial. He explained performing various tests on Villanueva and related several facts and opinions based on those results. One opinion was the various testing *could* be used to diagnose pedophilia [Fn.8] but Villanueva's results were not suggestive of it. [Fn.9] He also explained Villanueva's reported sexual history was "mild and unremarkable" with no "deviant sex acts." [Fn.10] Other testing, too, did not "generate any red flags about deviant sexual interest or sexual behaviors."

> [Fn.8] For the jury's benefit, pedophilia was defined, partially, as a persisting, recurring sexual interest in prepubescent minors.
>
> [Fn.9] The expert did not actually form a diagnosis. Instead, he suggested it was possible to do so based on some of the testing provided, and stated none of those results indicated pedophilia.
>
> [Fn.10] The expert acknowledged Villanueva was defensive in his responses but the expert believed "that was actually appropriate given" the circumstance the interview was not entirely private.

**Analysis**

"'The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion.'" (*People v. Duong* (2020) 10 Cal.5th 36, 60.) A decision to exclude expert testimony "'"'will not be reversed merely because reasonable people might disagree [with it]. "An appellate tribunal is neither authorized nor warranted in substituting its

6

judgment for the judgment of the trial judge.'"'"'" (*People v. McDowell* (2012) 54 Cal.4th 395, 429-430.) "'[A] trial court ... abuse[s] its discretion [only when] its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*Id*. at p. 430.)

We discern no abuse of discretion in this case. The expert that testified at trial did not conduct the entire Abel test and conceded the portion he did administer yielded questionable results. [Fn.11] A decision to exclude incomplete testing with questionable results is not patently unreasonable. [Fn.12] (Cf. Fortin, supra, 12 Cal.App.5th at p. 534 [Abel test properly excluded where witness is surrogate rather than "providing his 'individual interpretation' of the test."].)

> [Fn.11] Not only did the second expert base his Abel-test-result opinions on the first expert's testing, but that expert in turn relied on the Abel Institute to score the test. Indeed, that is the only way to score the test.

> [Fn.12] A primary argument in the trial court and on appeal is whether the Abel test has gained acceptance for use in a criminal jury trial. We need not decide the issue because we find the court properly excluded the evidence for a different reason. (*People v. Geier* (2007) 41 Cal.4th 555, 582 ["'[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason.' "].)

> To be fair, we agree the Abel test could, under certain circumstances, function properly as proffered in this case, i.e., for use in a criminal jury trial. As acknowledged by the trial court in this case, the Abel test was admitted into evidence in the trial underlying *People v. Saldana* (2018) 19 Cal.App.5th 432 (conviction reversed for *Miranda* error). In that case, there was no objection that the test was not generally accepted in the relevant scientific community. (See *People v. Nieves* (2021) 11 Cal.5th 404, 444.) Again, we need not decide the issue because we find the evidence was properly excluded on separate grounds, i.e., the incompleteness and questionable validity of the testing.

In any event, if error, the exclusion of evidence was harmless. The jury listened to the expert testify Villanueva denied sexual deviance, no test raised a concern about sexual deviance, and the overall test results were not suggestive of pedophilia. Additional testimony Villanueva was sexually interested in "adult Caucasian women" adds nothing to these points. Indeed, it is quite obvious the test results and opinions presented to the jury showed Villanueva was neither sexually interested in minors nor sophisticated enough to perpetrate continuous, widespread abuse. [Fn.13]

> [Fn.13] The jury, of course, was free to disregard the opinion evidence.

Evidence Villanueva was sexually interested in "adult Caucasian women" is immaterial because it does not make more persuasive the evidence he was neither sexually deviant nor pedophilic. [Fn.14] We do not believe specific evidence Villanueva preferred adults to minors would alter the outcome of the trial because there was already significant evidence he was not sexually deviant, i.e., interested in minors. [Fn.15] (See *People v. Jones* (2012) 54 Cal.4th 1, 67-68 [applying reasonable-probability-for-more-favorable-result standard to an assumed erroneous exclusion of expert testimony].)

> [Fn.14] On this point, Villanueva argues "the single most important test,

7

> which would have advised the jury that [his] sexual interest was in adult Caucasian women ... was excluded from evidence. As a result, allowing appellant to introduce 'some' evidence in his defense was no panacea for precluding him from introducing one of the most important points in his defense." We simply disagree it was meaningfully different from the evidence presented to the jury. Whether victim testimony was "'overwhelming'" or not is irrelevant to why the court's ruling was not prejudicial.
>
> [Fn.15] For the same reasons, we reject Villanueva's contention the trial court denied his "right to present a full defense" or his right "to due process." "[A]pplication of the ordinary rules of evidence ... does not 'impermissibly infringe on [the] right to present a defense.'" (*People v. Dworak* (2021) 11 Cal.5th 881, 899.) The same is true for due process.

Villanueva, 2022 WL 1078622, at *2-3.

### a. Legal Standard and Analysis

This claim is not cognizable on federal habeas review because the admissibility of evidence is a matter of state law. Estelle, 502 U.S. at 67-68 (state evidentiary ruling cannot provide ground for federal habeas relief unless the admission of evidence violated due process). There is no Supreme Court authority that squarely addresses whether a discretionary decision to exclude evidence violates a defendant's constitutional right to present relevant evidence. Moses v. Payne, 555 F.3d 742, 758-59 (9th Cir. 2009); see also Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011) ("Between the issuance of Moses and the present, the Supreme Court has not decided any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete defense or 'establish[ing] a controlling legal standard' for evaluating such conclusions. Brown, therefore, cannot – as the petitioner in Moses could not – show that the state appellate court's ruling was either contrary to or an unreasonable application of clearly established Supreme Court precedent."). For this reason, Petitioner cannot show that the exclusion of expert testimony concerning the Abel test violated his constitutional rights, and habeas relief is unavailable. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008).

Even if the Court were to consider the claim, Petitioner would not be entitled to relief. First, the state court determined that the decision to exclude the evidence was reasonable given the expert's concession that the Abel test he administered yielded questionable results. As stated by the appellate court, "[a] decision to exclude incomplete testing with questionable results is not

8

patently unreasonable." Villanueva, 2022 WL 1078622, at *3. Petitioner fails to show how this determination was unreasonable.

Second, the state court determined that any error in failing to admit the evidence was harmless. An expert witness testified that Petitioner denied sexual deviance, no test raised a concern about sexual deviance, and the overall test results were not suggestive of pedophilia. The state court reasonably determined that additional evidence that Petitioner was sexually interested in "adult Caucasian women" was entirely cumulative. Substantial evidence was already presented in the form of test results and expert opinions that Petitioner was not sexually interested in minors. The state court reasonably found that specific evidence that Petitioner preferred adults to minors would not have altered the outcome.

In conclusion, Petitioner fails to establish that the state court rejection of his claim was contrary to or an unreasonable application of Supreme Court precedent. The claim should be denied.

### 2. Ground Two

In his second claim, Petitioner contends that his due process rights were violated in the manner in which the appellate court resolved his appeal. In his petition for rehearing before the appellate court, Petitioner argued that his Sixth Amendment right to present a defense and his Fourteenth Amendment right to a full and fair trial were denied when the appellate court resolved his claim on grounds different from those raised before the district court. Petitioner contends he was denied notice of the alternative grounds for rejection and an opportunity to respond.

There is no merit to this claim since no Supreme Court holding has squarely addressed whether the manner of affirmance on an appeal can deny a petitioner's right to defend or to a fair trial retroactively. Moreover, Petitioner was on notice that the appellate court could resolve the claim on alternate grounds. The California Supreme Court has stated:

> No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.

1  D'Amico v. Bd. of Med. Examiners, 11 Cal. 3d 1, 19, 520 P.2d 10 (1974) (citing Davey v. Southern Pacific Co., 116 Cal. 325, 329 (1897)).  Such is the case in the Ninth Circuit as well. See Atel Fin. Corp. v. Quaker Coal Co., 321 F.3d 924, 926 (9th Cir. 2003) ("We may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt.")

**ORDER**

Accordingly, the Clerk of Court is DIRECTED to assign a District Judge to this case.

**RECOMMENDATION**

For the foregoing reasons, the Court HEREBY RECOMMENDS that the petition be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any replies to objections must be filed within ten (10) court days of the date of service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **December 5, 2023**              /s/ *Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE